## Louisville Trust Co. v. Cummins et al.

Nov. 11, 1941.

286

D. L. Street and Ogden, Galphin, Tarrant & Street for appellant.

Lawrence S. Leopold for appellees.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

In 1928 the appellee, Arthur J. Cummins, hereinafter called Cummins, borrowed from the Louisville Trust Company, a corporation, hereinafter called the Trust Company, $7,500 which loan he, Cummins, secured by mortgage on certain real estate in the city of Louisville, and also owed the Trust Company certain other indebtedness which was secured by certain securities. Cummins also owned certain business property in Jasper, Indiana, which he had mortgaged to the Commonwealth Life Insurance Company, of Louisville, to secure an indebtedness in the sum of approximately $8,500. Cummins made certain payments on his indebtedness to the Trust Company between the years 1928 and 1935. It appears that about July, 1935, the Trust Company conceived the idea that Cummins' indebtedness to it might not be properly secured and by agreement and negotiations between the parties the Trust Company paid the Commonwealth Life Insurance Company the amount of Cummins' indebtedness to it in order that the mortgage to the Commonwealth Life Insurance Company be released and that Cummins execute to the Trust Company a first mortgage against the Indiana property to secure all of Cummins' indebtedness to the Trust Company

which at that time aggregated the sum of $21,679 for which sum Cummins executed his note to the Trust Company and to secure the same he executed and delivered to the Trust Company a mortgage against the Indiana property. By the terms of the contract Cummins was to pay the note of $21,679 in monthly payments of $216.79 over a period of 65 months, the last payment falling due January 1, 1941.

The Indiana property owned by Cummins, which he mortgaged to the Trust Company, had been leased by Cummins to Newberry and Company for a long term lease providing for a rental of $250 a month, which lease and rentals Cummins assigned to the Trust Company as further security to the note in addition to the mortgage against the property, and pursuant to this assignment of rents Newberry and Company mailed to the Trust Company each month a check for $250 which the Trust Company credited to Cummins' indebtedness and these rentals, plus certain other moneys paid by Cummins exhausted his indebtedness to the Trust Company by May 17, 1940, or more than seven months before the maturity of the note. After Cummins had made the last payment on the note he then discovered that he had paid the Trust Company the sum of $776.55 more than the principal sum of the note plus 6% interest. Cummins made demand on the Trust Company for a refund of $776.55 which was refused, and thereupon he, Cummins, brought this action against the Trust Company to recover that sum, alleging that same was usury.

The Trust Company answered admitting that Cummins had paid it the sum of $776.55 more than the principal sum of the note plus legal interest but denied that said overpayment or any part thereof was usury and alleged that it was for extraordinary services rendered and that said sum was reasonable and the customary commission, etc., paid for such services. The answer set out the various items of service; namely:

"Fee of 5% for collections of $11,250.00    $562.50
"½% release fee    73.41
"Services in connection with collection of
     $200.00 note    10.00
"Appraisal fee and work done in connec-
     tion with obtaining of loan    150.00

"Total    $795.91"

and alleged that the service was and is of the reasonable value set forth in the tabulation, and the charge of $776.55 made by the Trust Company in addition to 6% on the loan was less than reasonable value for the services rendered.

The Trust Company alleged in its answer that prior to and at the time of the making of the loan the Trust Company was required to and did inspect the real estate situated in Jasper, Indiana, and to negotiate with the holder of the first mortgage (Commonwealth Life Insurance Company) on the Indiana property and as a result of said negotiations the Commonwealth Life Insurance Company's mortgage was released upon payment by the Trust Company of Cummins' indebtedness to the insurance company and said amount was incorporated in the loan of $21,679. The answer further set out that Cummins appointed the Trust Company his agent to collect the rents from the Indiana property, to pay all taxes due thereon, make necessary repairs to the property and properly maintain it. It alleged that it collected rents in the total sum of $11,250 for which it was entitled to a commission of 5%, or $562.50. It further alleged that its employee or agent went to Jasper, Indiana, to examine and appraise the property referred to and did other work in connection with obtaining the loan which was of reasonable value of $150. It also claimed $10 for services in connection with collection of a $200 note, and the further sum of $73.41 for release fee, making a total of $795.91. We note, however, that the Trust Company does not allege that it had any understanding or agreement with Cummins to pay the service charges enumerated above. It merely alleges that the services were rendered by it and the charges therefor were reasonable.

By reply Cummins denied all the affirmative allegations of the answer and affirmatively pleaded that the property in Indiana was at the time of the execution of the note sued on herein and is now of a value greatly in excess of the then existing mortgage thereon, and of the said mortgage note of $21,679, and that the Trust Company requested of Cummins an assignment of the lease or rentals of the Indiana property as further security on the note of $21,679 and that solely because of the assignment of the lease and rentals as additional security to the note, Newberry and Company paid the rental of

$250 each month directly to the Trust Company, and that at the time of the assignment of the lease and rentals thereunder it was agreed that the Trust Company was not to charge any commission on account of the receipt by it of the rentals, and that it rendered no services in collecting said rent, the check for same being mailed to the Trust Company each month, and all the Trust Company did was to deposit the check in the bank. Cummins further alleged that the $21,679 note included no new money but constituted the aggregate sum of other notes, all of which bore interest of 6%. He further alleged that all the negotiations and arrangements made resulting in the execution of the note and mortgage of $21,679 and assignment of rentals were at the request or suggestion of the Trust Company and for its benefit in order to obtain satisfactory security to Cummins' indebtedness to it. The affirmative allegations of the reply were controverted by rejoinder thus completing the issues.

The case came on for trial and the evidence taken and the court submitted the case to the jury upon the issue of whether the Trust Company rendered to Cummins any special or extraordinary services in connection with the loans and transactions set out in the pleadings and, if so, to find a reasonable value for such services. The jury found the sum of $120 to be reasonable compensation for special services rendered by the Trust Company and deducted that sum from the amount sued for ($776.55) leaving a balance of $656.55 and rendered a verdict in favor of Cummins against the Trust Company for the last-named sum, and from the judgment rendered on that verdict the Trust Company has appealed.

In motion and grounds for a new trial the Trust Company assigns a number of alleged grounds of error but in its brief it abandons all alleged errors except the one that the verdict of the jury is contrary to the evidence, and insists that the only competent testimony introduced demonstrated that the value of the services rendered by the Trust Company was in excess of the credit allowed by the jury.

Sidney Jenkins, Vice-President of the Trust Company, testified that they made no charge against Cummins for the collection of rents and explained why they waived that charge by saying that at the time the Trust

Company made the loan of $21,679 to Cummins it was made on the regular monthly payment plan, and admitted that they charged Cummins 7% interest. He said, "It was customary to expect the rate above six per cent, and was called 'service charge.'" He further said that 5% was the usual fee charged for collecting rents and that in this particular case the Trust Company got a check from Newberry and Company, and further said: "It is true we didn't have a lot to do to earn that service." He further said that they saved Mr. Cummins a tax bill of $125 or $137 by eliminating it from Cummins' Indiana tax bill because he was not a resident of that state; that the Trust Company made certain adjustments and repairs to Cummins' Indiana property and paid the insurance; that he did not charge Cummins for making the trip to Indiana to appraise the property in connection with negotiating the loan to Cummins, and that they made no charges for these matters because Cummins was paying 7% interest.

It is thus seen that while the Trust Company pleaded in its answer that it was entitled to a 5% commission, or $562.50, for the collection of rents, and $150 for the trip to Indiana and negotiating the loan, yet, its authorized agent and chief witness, Mr. Jenkins, admits that it was understood that no commission would be paid for the collection of rents, nor any charge made for the trip to Indiana, and further admits that the Trust Company charged Cummins 7% interest on the loan, which he says "we call service charge." Since Mr. Jenkins' evidence eliminates any claim for the above two items we need not further consider them. In regard to the Trust Company's other claims for service, Mr. Cummins positively denies that any such services were rendered in his behalf by the Trust Company. He said that he went to Jasper, Indiana, and had the repairs made on the property himself and paid the bills or cost therefor, and that the Trust Company had nothing to do with it in any way or manner. He said that he took care of the insurance on the property himself through his insurance agent, and that the Trust Company paid for no insurance on the building. Briefly stated, Mr. Cummins denied that the Trust Company rendered any of the services claimed in its pleadings or testified to by Mr. Jenkins.

The evidence of two other witnesses was taken—

one for the Trust Company and one for Cummins—but since their evidence is not of sufficient importance to change the situation as portrayed by Mr. Jenkins and Mr. Cummins it is not important that we further extend this opinion by a review of their evidence. It suffices to say that the evidence is conflicting except as to the charges for the collection of the rents and the trip to Indiana, which questions we have already disposed of.

The court submitted the case to the jury by these instructions:

"1. The Louisville Trust Co. admits that it has collected from plaintiffs, Arthur J. Cummins and Yancey Lee Cummins, the sum of $776.55; and if you believe from the evidence that the defendant, The Louisville Trust Co., performed services referred to in the evidence, in reference to the loan between the plaintiffs and defendant, then you will find for The Louisville Trust Co. the reasonable value of such services, as you believe The Trust Company rendered with reference to the loan between plaintiffs and defendant referred to in the evidence, your finding not to exceed $776.55.

"2. If you find for The Louisville Trust Company, and such finding equals the sum of $776.55, then the plaintiffs Cummins shall recover nothing under your verdict, and you shall so state; however, if such finding in favor of the Louisville Trust Company is less than the sum of $776.55, then you will credit such finding as against the sum of $776.55, and then find a verdict for the plaintiffs for the difference between such sums.

"3. If you find that the Louisville Trust Co. did not render any services with reference to said loan, as referred to in the evidence, then you will find for the plaintiffs Cummins in the sum of $776.55."

Upon the instructions the jury made the verdict indicated in a previous part of this opinion. The objections urged to the verdict is that the figures arrived at by the jury cannot be reconciled with the evidence as it relates to the particular items in controversy. It is to be noticed that the instructions, which are not complained of, authorized the jury to find for the Trust Company a reasonable value for extra services ren-

dered, if any, without reference to any particular item. We do not think it material whether or not the sum found by the jury may be arrived at by any mathematical calculation based upon any particular item or items. Under the conflicting evidence and the instructions the jury had the right to find on the whole case a sum it thought reasonable without making a finding upon each item of service alleged to have been performed.

It is to be noticed that once the items for commission for collection of rents and trip to Indiana are eliminated, there are left only the charges of $73.41 representing ½% commission, and $10 for collection of the $200 note, totaling $83.41. Yet, the jury found for the Trust Company $120, or $36.59 more than it might have found under the evidence and instructions.

Since appellant does not complain of any errors of law relating to the instructions or in the admission or rejection of evidence, but relies solely upon the alleged inconsistency of the jury's verdict, and since we have concluded that the verdict is not improper, we need not discuss other questions raised.

Judgment affirmed.